Cite as 2023 Ark. App. 359

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-22-499

JOSE HINOJOSA

APPELLANT

V.

TREXIS INSURANCE CORPORATION

APPELLEE

Opinion Delivered August 30, 2023

APPEAL FROM THE BENTON
COUNTY CIRCUIT COURT
[NO. 04CV-21-1002]

HONORABLE JOHN R. SCOTT,
JUDGE

AFFIRMED

## MIKE MURPHY, Judge

Appellant Jose Hinojosa appeals the order of the Benton County Circuit Court granting summary judgment in favor of the appellee, Trexis Insurance Corporation. On appeal, Hinojosa argues summary judgment was inappropriate because certain provisions contained in Trexis's insurance policy were ambiguous and contrary to public policy. We affirm.

On April 4, 2021, Hinojosa was driving with two passengers in his car when his vehicle was hit by a vehicle driven by Jose Saucedo, who ran a red light. Saucedo was intoxicated. The car Saucedo was driving was insured by Trexis Insurance, but the named insured was not Saucedo but his mother, Betsy Pineda. On May 7, Hinojosa and his two passengers filed suit against Saucedo for damages stemming from the accident. Trexis intervened and moved for summary judgment, asking the court to declare that Trexis owed

no duty to defend or indemnify Saucedo for damages from the accident because Saucedo was not a covered individual under the policy.

A final order and consent judgment was entered on December 28, resolving the litigation between Hinojosa and all of the plaintiffs. The only matter left to determine was if Trexis would be obligated to indemnify Saucedo. Saucedo, Hinojosa, and the other plaintiffs filed a joint response to Trexis's motion for summary judgment, arguing that Saucedo was a covered individual under the policy terms, and alternatively, to exclude him would be contrary to public policy.

Central to the issue is one of the exclusions in the Trexis policy, which provides that Trexis does not provide liability coverage for "'bodily injury' or 'property damage' caused by or in any way arising out of operation, maintenance or use of a vehicle by a . . . person who does not possess a valid, in-force operator's license." It was undisputed that, at the time of the accident, Saucedo was driving with a suspended driver's license. Trexis argued that because Saucedo's license was suspended, he was excluded from coverage under the policy. The plaintiffs argued, however, that this policy provision was ambiguous and should be liberally construed in their favor. The court found that the policy provision was unambiguous and excluded coverage in this case as a matter of law. From this order, Hinojosa appeals. On appeal, he argues that the policy provision at issue was ambiguous, and to deny coverage on these facts is against public policy.

Summary judgment should be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law.

2

*Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004). Regarding insurance contracts, our law is well settled. First we determine if coverage exists, then we determine if any exclusionary language within the policy eliminates the coverage. *Hurst v. S. Farm Bureau Cas. Ins. Co.*, 2011 Ark. App. 657, at 2–3. Exclusionary endorsements must adhere to the general requirements that the insurance terms be expressed in clear and unambiguous language. *Id.* If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is susceptible to more than one reasonable interpretation. *Harasyn v. St. Paul Guardian Ins. Co.*, 349 Ark. 9, 75 S.W.3d 205 (2002). Whether the language of the policy is ambiguous is a question of law to be resolved by the court. *Id.*

The policy that Pineda had with Trexis provided that Trexis would pay damages for bodily injury or property damages for which any "covered person" became legally responsible because of an auto accident. The record indicates there is some dispute if Saucedo was truly a "covered person" under the policy provisions. Even if Saucedo were a "covered person" under the policy, however, Trexis explains that the provision excluding a person operating a vehicle without a "valid, in force" license would apply. The court ruled as a matter of law that Saucedo was not covered under Pineda's policy.

Hinojosa did not receive a ruling on his public-policy argument, and it is therefore not preserved for our review. *See, e.g.*, *Tillman v. Raytheon Co.*, 2013 Ark. 474, at 18, 430 S.W.3d 698, 709. Thus, the straightforward issue before us today, then, is whether an accident caused by a person with a suspended license is unambiguously excluded from coverage pursuant to the terms of Trexis's policy.

An insurer may contract with its insured upon whatever terms the parties may agree on, which are not contrary to statute or public policy. *Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 412, 867 S.W.2d 457, 458 (1993). Contracts of insurance receive a practical, reasonable, and fair interpretation consistent with the apparent object and intent of the parties in light of their general object and purpose. *Parker v. S. Farm Bureau Cas. Ins. Co.*, 104 Ark. App. 301, 292 S.W.3d 311 (2009). The terms "valid" and "in-force" are not defined in Trexis's policy. Even still, the fact that a term is not defined in a policy does not automatically render it ambiguous. *Nichols v. Farmers Ins. Co.*, 83 Ark. App. 324, 330, 128 S.W.3d 1, 4 (2003).

The insurance policy speaks in terms of an "operator's license." Both parties use this phrase below and to this court interchangeably with "driver's license." The policy does not define "license," but both parties use it in the context of state-issued permission to drive. Hinojosa acknowledges that Trexis's assertion that a "valid, in-force, operator's license" could reasonably be interpreted to mean a license that has not been suspended. He, however, also contends that it could just as reasonably be interpreted to mean that it is a license that is legally issued (that is, not forged) and not revoked. He explains that by virtue of being

4

suspended, it could not be revoked and was therefore "in force." Both parties generally agree that the word "valid" in terms of a driver's license means one properly issued by a state's licensing authority.

In considering the phraseology of an insurance policy, the common usage of terms should prevail when interpretation is required. *ProAssurance Indem. Co. v. Metheny*, 2012 Ark. 461, at 25, 425 S.W.3d 689, 703. Indeed, the Merriam-Webster online dictionary defines "valid" to mean "executed with the proper legal authority and formalities." *Valid*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/valid (accessed August 24, 2023). Likewise, it defines the phrase "in force" to mean "valid, operative." *In force*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/in%20force (accessed August 24, 2023). *Black's Law Dictionary* defines "in force" as "in effect; operative; binding." *In Force*, *Black's Law Dictionary* (10th ed. 2014). These terms are not ambiguous; they are not susceptible in this context to other interpretations. In this instance, it means properly issued permission by a state allowing a person to exercise the privilege of driving. Terms existing outside the policy ("suspended" or "revoked," for example) have no impact on what the policy itself says. Put another way, Saucedo's status regarding his own license does not interfere with the terms' ordinary meanings within the policy.

We next turn to whether Saucedo's license status excludes him from coverage under Trexis's policy. When construing insurance policies, where terms of the policy are clear and unambiguous, the policy language controls, and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Smith v. Shelter Mut. Ins.*

5

*Co.*, 327 Ark. 208, 937 S.W.2d 180 (1997). Saucedo's license was undisputedly suspended at the time of the accident. Under the Motor Vehicle Driver's License Act, to "suspend" means "to temporarily withdraw by formal action a driver's license or privilege to operate a motor vehicle on a public highway, which shall be for a period specifically designated by the suspending authority." Ark. Code Ann. § 27-16-104(11) (Repl. 2022). Pursuant to this definition, then, Saucedo, at the time of the accident, did not have license to drive; the permission was withdrawn. Accordingly, Saucedo was excluded as a covered person under Trexis's insurance policy due to his lack of an in-force operator's license. Summary judgment was appropriate.

Affirmed.

HARRISON, C.J., and THYER, J., agree.

*Ken Swindle*, for appellant.

*Watts, Donovan, Tilley & Carson, P.A.*, by: *David M. Donovan* and *Taylor N. Williams*, for appellee.